# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Shevonne Richardson, individually and on behalf of Minor R.R., ) ) ) | CIVIL ACTION NO.: 3:22-cv-01787-SAL |
| Plaintiffs, ) ) | **COMPLAINT** **(Jury Trial Demanded)** |
| v. ) ) | |
| United States of America, ) ) | |
| Defendant. ) ) | |

COMES NOW, Shevonne Richardson, individually and on behalf of Minor R.R. (collectively referred to as "Plaintiffs"), and file this tort claims act Complaint against the United States of America for tortious acts committed by Doctor Carol Alan as an agent of Tandem Health Obstetrics and Gynecology, a Federally Qualified Health Center, and set forth as follows:

## NATURE OF THE CASE

1. This is an action for damages under the Federal Tort Claims Act ("FTCA") arising out of the conduct of Defendant United States of America, ("Defendant"), by and through its duly authorized agents and/or representatives, including, without limitation Carol Alan, M.D., and Tandem Health Obstetrics and Gynecology, in failing to provide appropriate obstetric care to Plaintiff Shevonne Richardson ("Plaintiff Richardson"), resulting in catastrophic and permanent birth injuries to Plaintiff minor R.R. ("baby R.R"), including disabling injuries to baby R.R.'s left arm.

2. As set forth in this complaint, Defendant's multiple and inexplicable errors during the pregnancy of Plaintiff Richardson and delivery of baby R.R. included but were not limited to the failure to adequately prepare for delivery of a newborn with suspected fetal macrosomia, failure

to effectively perform a vacuum extraction, failure to abide by manufacturer recommendations and specifications in applying a Kiwi vacuum during delivery, and applying undue and unreasonable force to baby R.R.'s head, neck and shoulders during delivery.

3. As a direct and proximate result of Defendant's failures, enunciated in this complaint, and as supported through the discovery and trial of this matter, Plaintiffs suffered permanent and irreparable injuries, including emotional trauma, and significant physical developmental delays to baby R.R.

4. Plaintiffs now seek monetary damages from Defendant for their injuries, including past, present, and future relief, along with all such other relief in law or equity as the court deems proper.

5. Plaintiffs plead these causes of action in the cumulative and in the alternative, having been informed that no election of remedies is required until a trial of this matter.

**PARTIES**

6. At all times relevant to this complaint, Plaintiff Shevonne Richardson has been the mother and guardian of baby R.R., and a citizen and resident of Sumter County, South Carolina. As set forth in this complaint, during the operative timeframe, Plaintiff Richardson was a patient of Defendant, under Defendant's direct care, supervision, and control.

7. At all times relevant to this complaint, baby R.R. has been a minor under the age of 18, and a patient of Defendant, under Defendant's direct care, supervision, and control, and a citizen and resident of Sumter County, South Carolina.

8. At all times relevant to this complaint, Defendant United States of America deemed Tandem Healthcare and its clinicians, practitioners, and licensed professionals, including Dr. Carol Alan, duly authorized federal employees.

9. At all times relevant to this complaint, Tandem Healthcare ("Tandem") has been a non-profit healthcare provider organized and existing pursuant to South Carolina law, located in Sumter County. During the operative timeframe, Tandem was deemed a federally qualified health center, and thus, at all times relevant to this complaint, was acting as an authorized agent and representative of the United States.

10. At all times relevant to this complaint, Carol Alan, M.D., ("Dr. Alan"), has been a physician licensed pursuant to South Carolina law with a specialty in obstetrics and gynecology, and was the responsible physician during the delivery of baby R.R. At all times relevant to this complaint, Dr. Alan was operating within the course and scope of her employment as a deemed federal employee.

11. At all times relevant to this complaint, Dr. Alan was required to abide by the applicable standards, regulations, statutes, and policies governing her profession, as well as those followed by Tandem and any provider granting privileges to Dr. Alan.

12. At all times relevant to this complaint, Defendant, by and through its deemed agents, Tandem Health and Dr. Alan, had a responsibility to provide access to competent medical care, including competent obstetric care. This responsibility extended to ensuring that clinicians, nurses, technicians, and other deemed staff, personnel, employees and representatives abided by applicable standards, statutes, regulations, policies and/or procedures.

**JURISDICTION AND VENUE**

13. As set forth herein, at all times relevant to this complaint, Plaintiffs Richardson and baby R.R. were patients subject to Defendant's complete and total control, and were thus owed at least minimally adequate care to guard against foreseeable risks of harm.

14. This matter arises pursuant to the Federal Tort Claims Act.

15. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1346(b)(1).

16. At all times relevant to this complaint, Tandem Health and Dr. Alan, as well as other employees and personnel of Tandem involved in the delivery of Baby R.R., were deemed federal employees, and were responsible for the adequate provision of medical care to patients including Plaintiffs Richardson and baby R.R.

17. The acts and/or omissions set forth in this complaint all occurred on premises owned and operated by Defendant, at least one of whom has a principal place in this division.

18. Upon information and belief, at all times relevant to this complaint, Defendant employed and/or empowered physicians (including Defendant Alan), nurses, aides, technicians, administrators, interns, staff, managers, and other healthcare professionals with actual and/or apparent authority to operate on Defendant's behalf, and were responsible for ensuring the care and services provided by such individuals was reasonable and adequate, in accord with the laws of South Carolina along with other applicable laws, standards, policies, and/or procedures, statutes, rules and regulations.

19. Upon information and belief, at the time of the incident that is the subject of this complaint, all Defendant had knowledge or reason to know that Plaintiffs were patients under their care, supervision, and control, and were further charged with knowledge of the actual condition of Plaintiffs, including that Plaintiff Richardson was at substantial risk of delivering a newborn with

4

fetal macrosomia. Further, all Defendants were on notice that baby R.R. might suffer a serious shoulder dystocia during delivery, which would require intervention.

20. Upon information and belief, at all times relevant to this complaint, the employees, agents, contracted entities, aides, technicians, clinicians, nurses, administrators, and other personnel operating on behalf of Defendant were all working within the course and scope of their actual and/or apparent authority.

21. Prior to initiating this suit, Plaintiffs exhausted their administrative remedies pursuant to 28 U.S.C. §2675(a).

22. Plaintiff filed her administrative claim with supporting documents via a secure link with the U.S. Department of Health and Human Services' Office of The General Counsel on September 20, 2021.

23. More than six (6) months has passed, and Plaintiff has not received a response to her claim.

24. Jurisdiction and venue are therefore proper before this court.

## FACTUAL BACKGROUND

25. Plaintiffs reallege the preceding paragraphs as though repeated verbatim herein.

26. At all times relevant to this complaint, Plaintiffs Shevonne Richardson and baby R.R. were patients under Defendant's direct care, supervision, authorization, and control.

27. Between April and May of 2019, Plaintiff Shevonne Richardson learned she was pregnant with her second child.

28. Previously, Plaintiff Richardson had delivered a baby girl who sustained a shoulder dystocia during delivery requiring vacuum extraction.

29. During her second pregnancy with baby R.R., Plaintiff Richardson gained over forty pounds.

30. Given the size of her first baby, her maternal weight gain, the fact that baby R.R. was a boy, and a second baby, at all times relevant to this complaint, Defendant's knew or should have known that Plaintiff Richardson was at heightened risk of delivering a baby with fetal macrosomia, or a birth weight considered large for gestational age.

31. At all times relevant to this complaint, Defendant knew or should have known that a large birth weight increases the risk for shoulder dystocia, which correspondingly increases the risk of a birth injury.

32. From December 12, 2019 through December 27, 2019, between weeks 34 and 36 of her pregnancy, Plaintiff Richardson gained an additional 10 pounds, and was noted to be between four and five centimeters dilated.

33. On January 9, 2020, when Plaintiff Richardson was roughly 38 weeks and 3 days pregnant, a sonogram indicated a fetal weight of 4,248 grams, or roughly 9.4 pounds. Defendants scheduled to induce Plaintiff Richardson on January 16, 2020.

34. When a projected birth weight is 4,500 grams or more, standard of care requires a non-vaginal delivery; however, a birth weight close to that range establishes sufficient notice of potential fetal macrosomia such that measures should be taken against foreseeable harm from shoulder dystocia.

35. At all times relevant to this complaint, Defendant knew of should have known that the risk of significant harm from dystocia increases dramatically with increased fetal weight.

36. Plaintiff Richardson was induced on January 16, 2020. During her labor, Plaintiff was administered significant amounts of Pitocin but her delivery did not progress.

37. According to Dr. Carol Alan's operative note:

> I was called to the room to evaluate the need for vacuum delivery. The patient had a history of needing vacuum assistance with the first baby that she had. **We anticipated a large baby this time**. The fetal heart rate remained stable throughout the second stage of labor. Once the patient had started proclaiming she could not push anymore, the decision was made and discussed with her for placement of the kiwi vacuum. The fetal station was re-assessed. And found to be +5/-5. The kiwi vacuum was placed at the flexion point with the next contractions, the vacuum was activated and gentle traction was placed. The fetal head descended slowly. There was one pop-off. The vacuum was released between contractions. The fetal heart rate remained stable. The head delivered without trauma. In anticipation of a large baby, the patient was in McRoberts position and suprapubic pressure was placed. The anterior shoulder did not deliver easily, and the posterior arm and shoulders were delivered a-traumatically in order to reduce shoulder dystocia. **Total time of dystocia was 90 seconds.**

(Emphasis added).

38. As indicated in the delivery note, baby R.R. remained stable throughout the delivery. The notes further contain no indication of a prolonged dystocia.

39. Despite baby R.R. remaining stable during the delivery, upon information and belief, following delivery of his head, Dr. Alan applied significant to baby R.R.'s neck in order to deliver his shoulders and body.

40. Defendant's use of force during delivery was not justified, nor supported by any urgency or emergency.

41. At the time of delivery, baby R.R. weighed 5,238 grams, and was significantly in excess of 4,500 grams.

42. Upon information and belief, based upon the presence of numerous risk factors, Defendant knew or should have known baby R.R. was likely to weigh over 4,500 grams as of the date of his delivery.

43. This knowledge is further corroborated in Dr. Alan's notes, stating "we anticipated a large baby this time." In addition, Dr. Alan had the vacuum in place for the delivery.

44. Following his birth, baby R.R. had a 1-minute AGPAR score of 3. The records note a serious brachial plexus injury, and that baby R.R. was unable to use his left arm. This condition did not resolve while he and Plaintiff Richardson were in the hospital after delivery.

45. The impairment to R.R.'s left arm and left side was so severe that, in the months after his delivery, baby R.R. was seen by a specialist in Philadelphia who recommended corrective surgery.

46. Baby boy R.R. underwent corrective surgery in June, 2020. During the surgery, baby R.R.'s surgeon discovered cervical spine ruptures down nearly the entire length of baby boy R.R.'s cervical spine.

47. Upon information and belief, these cervical spine ruptures could not have occurred without application of significant and traumatic force to baby boy's head and neck during delivery.

48. Despite the surgical repair, baby R.R. did not gain meaningful use of his arm.

49. During the timeframe since his birth to present, because of the lack of function to his arm, baby R.R. has missed significant physical milestones such as reaching, crawling, grasping, and flipping.

50. Baby R.R. continues to undergo rehabilitative and reparative treatment.

51. Baby R.R. will likely be impacted by this injury for the rest of his life, and may never have meaningful use of his left arm.

52. The injury set forth herein was the direct and proximate result of Defendant's negligent, grossly negligent, reckless and/or wanton conduct.

## COUNT I:
## (Negligence)

53. Plaintiffs reallege the preceding paragraphs as though repeated verbatim herein.

54. At all times relevant to this complaint, Defendant was responsible for providing due, reasonable and adequate care to patients, including Plaintiff Richardson and baby R.R., and to protect patients from foreseeable and preventable injuries.

55. At all times relevant to this complaint, Defendant had actual knowledge that baby R.R. would be born with fetal macrosomia, and could suffer corresponding complications during delivery, including a significant shoulder dystocia and resultant birth injury.

56. At all times relevant to this complaint, Defendant represented that it would provide competent providers, capable of safely delivering baby R.R. under non-emergent circumstances, in accord with the applicable standard of care.

57. As set forth in this complaint, notwithstanding Defendant's representations, Defendants by and through its authorized representatives acting in the course and scope of their capacity as deemed federal employees failed to provide minimally adequate care to Plaintiff Richardson and baby R.R. in one or more of the following particulars:

    a. Applying undue, unreasonable and excessive force to baby R.R.'s head, neck, and shoulders during delivery;

    b. Failing to adequately or with a minimum regard for safety, prepare for delivery of a large baby despite Plaintiff Richardson's known risk factors for fetal macrosomia;

    c. Failing to appropriately apply the Kiwi vacuum and/or applying the vacuum in a manner against manufacturer recommendations;

d. Failing to appropriately monitor, observe, and/or provide access to minimally competent clinical care during labor and delivery;

e. Failing to appropriately monitor, observe, and/or staff the labor and delivery of Plaintiff and baby R.R.;

f. Failing to provide minimally adequate care during the labor and delivery of Plaintiff and baby R.R., including the use of undue and excessive force upon baby R.R. with no justification;

g. Failing to observe and/or control Defendants' representatives and/or employees;

h. Failing to create, implement and/or enforce sufficient policies and procedures related to labor and delivery to prevent foreseeable risks of harm;

i. Failing to properly create, implement and enforce policies and procedures regarding patient care;

j. Failing to properly and adequately train or ensure training of Defendants' authorized representatives;

k. Failing to provide access to competent clinicians, nurses and other medical staff during labor and delivery;

l. Failing to abide by licensing, regulatory, statutory, and/or certification requirements;

m. Failing to provide care commensurate with Plaintiffs' particularized needs;

n. Such other failures, act and/or omissions as may be determined during discovery or a trial of this case.

58. In addition to the particulars set forth above, at all times relevant to this complaint, Defendant owed Plaintiff Richardson and baby R.R. an ordinary duty to use due care to prevent harm to Plaintiffs, which duty Defendant violated in allowing the unauthorized use of excessive force upon baby R.R. during delivery.

59. The use of undue force upon the head, neck and shoulders during delivery is such an obvious and gross deviation from the standard of care so as to require no additional expertise.

60. As a direct and proximate result of Defendant's negligent, negligent per se, reckless, willful and wanton acts and/or omissions, Plaintiff Richardson was put in reasonable fear for the life of her child, and baby R.R. sustained severe and disabling injuries, including the loss of use of his left arm.

61. Defendant's actions, inactions and/or omissions, whether performed individually or by and through agents, authorized representatives, employees and personnel, demonstrated a conscious disregard and indifference to the rights, safety and sanctity of Plaintiff Richardson and baby R.R., and resulted in severe, disabling injuries likely to impact baby R.R. for the duration of his life.

62. Plaintiffs are therefore entitled to judgment against Defendant and for actual, compensatory, and consequential damages, and such other relief in law or equity, including attorney's fees and costs, as this court deems proper.

## COUNT II:
### (Vicarious Liability)

63. Plaintiffs reallege the preceding paragraphs as though repeated verbatim herein.

64. As set forth herein, Plaintiffs experienced harm from the negligent, grossly negligent, intentional, reckless acts of the employees, servants, and/or agents of Defendant.

65. The wrongful conduct of Defendant's employees, servants, and/or agents related to duties performed in the course and scope of their employment with Defendant, or by and through their actual and/or apparent agency through Defendant.

66. The failure to provide adequate care to Plaintiff Richardson and baby R.R. by the employees, servants, or agents of Defendant occurred during a time and place created and facilitated by the employment and/or authority conferred by Defendant.

67. The events set forth in this complaint, which transpired under Defendant's authority, included the application of undue and unnecessary force during the delivery of baby R.R., catastrophically leading to a permanent injury, and were well-known and foreseeable hazards.

68. As a direct and proximate result of the negligent, grossly negligent, negligent per se, reckless, willful and wanton acts of Defendant's employees, agents, servants, and/or those vested with actual and/or apparent agency on behalf of Defendant, Plaintiffs suffered needlessly, and incurred permanent and disabling injuries, including the loss of use of baby R.R.'s left arm.

69. Plaintiffs are therefore entitled to judgment against Defendant and for actual, compensatory, consequential damages, and for such other relief in law or equity as this court deems proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendant, and for actual, consequential, and compensatory damages, and for such additional relief in law and/or equity as this court deems just and proper.

Respectfully Submitted, this 7th day of June, 2022,

/s/ Jessica L. Fickling
John R. Alphin (Fed. I.D. No. 9923)
Jessica L. Fickling (Fed. I.D. No. 11403)
jalphin@stromlaw.com
jfickling@stromlaw.com
Strom Law Firm, LLC
6923 N. Trenholm Road
Columbia, South Carolina 29206
TEL:   (803) 252-4800
FAC:   (803) 252-4801